## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAKOTA HALDEMAN, individually and on behalf of all similarly situated persons, <br><br> Plaintiff, <br><br> v. <br><br> CONSTELATION CLEARSIGHT, LLC f/k/a EXELON CLEARSIGHT, LLC, EXELON BUSINESS SERVICES COMPANY, LLC, and EXELON CORPORATION, <br><br> Defendants. | JURY TRIAL DEMANDED <br><br> No. _____ |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff, Dakota Haldeman ("Plaintiff"), by and through his counsel, Mobilio Wood, and Cohn Lifland Pearlman Herrmann & Knopf LLP, on behalf of himself and all others similarly situated, alleges as follows:

## INTRODUCTION

1.     This lawsuit arises under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), the Pennsylvania Minimum Wage Act, 43 P.S. § 260.1 *et seq*. ("PMWA"), and Pennsylvania common law, as a result of

Defendants' failure to pay Plaintiff, and other similarly-situated employees who are members of the Collective and Class defined herein, all earned wages.

2.    Plaintiff brings this action as: (i) a collective action pursuant to the FLSA; and (ii) a class action pursuant to Pennsylvania statutory and common law and Rule 23 of the Federal Rules of Civil Procedure, to recover unpaid wages and unpaid overtime wages.

3.    Plaintiff, as well as the Collective and Class members, are persons who perform or performed work for Defendants Constelation Clearsight, LLC f/k/a Exelon Clearsight, LLC, Exelon Business Services Company, LLC, and Exelon Corporation (collectively, "Defendants" ) as commercial drone operators ("Drone Pilots") and/or utility pole inspectors ("Pole Inspectors").

4.    As further described herein, Defendants willfully violated the FLSA, the PMWA, and Pennsylvania common law (the PMWA and Pennsylvania common law are collectively referred to herein as "PA Laws") by requiring Plaintiff and other Drone Pilots and Pole Inspectors to charge drone batteries, charge drill batteries, and attend work-related meetings, following the conclusion of their shifts and without compensation.

## CLASS AND COLLECTIVE DEFINITIONS

5.    Plaintiff brings this suit on behalf of the following similarly-situated collective:

All individuals who perform or performed work for Defendants as Drone Pilots and/or Pole Inspectors, at any time during the applicable limitations period covered by this Complaint (*i.e.*, two years for FLSA violations, and three years for willful FLSA violations) up to and including the date of final judgment in this matter, and who are named Plaintiffs or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 16(b) (the "Collective").

6.     Plaintiff also brings this suit on behalf of the following similarly-situated class of persons:

All individuals who perform or performed work for Defendants as Drone Pilots and/or Pole Inspectors and who reported to one or more of Defendants' locations within the Commonwealth of Pennsylvania at any time during the period beginning four years before the filing of this Complaint up to and including the date of final judgment in this matter (the "Class").

## PARTIES

7.     Plaintiff is an adult individual and a citizen of the Commonwealth of Pennsylvania.

8.     Plaintiff has consented in writing to be a Plaintiff in this action and has executed a Consent to Sue form.

9.     Plaintiff was employed by Rangam Consultants Inc. ("Rangam"), a professional staffing agency, from in or about April 2021 through in or about November 2021.

10.     Between April 2021 and November 2021, Rangam continuously staffed Plaintiff with Defendants as both a Drone Pilot and a Pole Inspector.

3

11.     Defendant Constelation Clearsight, LLC f/k/a Exelon Clearsight, LLC ("Clearsight")  is a Delaware limited liability company with its headquarters at 300 Exelon Way, Kennett Square, Pennsylvania 19348.

12.     Defendant Exelon Business Services Company, LLC is a Delaware limited liability company which, upon information and belief, maintains its headquarters in Pennsylvania.

13.     Defendant Exelon Corporation is a Pennsylvania corporation with its headquarters at 10 S. Dearborn St., Chicago, Illinois 60603.

14.     Plaintiff's Temporary Worker Acknowledgment with Rangam purports to make him an independent contractor as to Defendants, stating, in relevant part: "I acknowledge that my relationship with the Exelon company for which I will be performing work ("Buyer"), its Affiliates, or any of their successors is that of an independent contractor, not an employee, and that all services performed by me are pursuant to a contract between Buyer and Rangam Consultants Inc. ("Vendor"), as an employee of either Vendor or one if [sic] its Staffing Companies, as applicable."

15.     In fact, however, Plaintiff's relationship with Defendants meets all the hallmarks of an employer-employee relationship, as does that of the members of the proposed Collective and Class.  Specifically, at all times relevant and material herein, Defendants maintained the authority to promulgate rules, assignments, and

conditions of employment for Drone Pilots and Pole Inspectors, including Plaintiff; impose discipline on Drone Pilots and Pole Inspectors, including Plaintiff; and exercise control over the employee records of Drone Pilots and Pole Inspectors, including Plaintiff.

16.    Among other things, Plaintiff was provided with a copy of the Exelon Corporation Code of Business Conduct (the "Exelon Code").

17.    The Exelon Code states, on page 6: "All Exelon businesses must ensure that, either through contractual provisions or certification, others representing Exelon – such as … independent contractors … agree to follow applicable Exelon ethical and legal standards."

18.    The Exelon Code also states, on page 7, that Exelon may terminate independent contractors if they fail to abide by the Exelon Code: "Supervisors and employees must: … Take necessary action, up to and including terminating a contract with anyone representing Exelon, if the person fails to honor his or her agreement to abide by the Exelon Code."

19.    Plaintiff also was required to read, understand, and comply with Exelon's Fitness for Duty Program and Access Authorization requirements (the "Requirements").

20.    The Requirements state, among other things, that supervisory reviews must be conducted in accordance with Exelon procedures.

21.    Accordingly, Defendants were Plaintiff's joint employers at all times relevant and material herein.

22.    At all relevant times, Defendants have transacted business, including the employment of Drone Pilots and Pole Inspectors, within the Commonwealth of Pennsylvania, including within this judicial district.

23.    In engaging in the conduct alleged herein, Defendants acted in the course, scope of, and in furtherance of the aforementioned employment relationships.

## JURISDICTION AND VENUE

24.    This Court has jurisdiction over this action in accordance with 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq*.

25.    This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

26.    Venue is properly laid in this judicial district pursuant to 28 U.S.C. § 1391, because acts or omissions giving rise to the claims of the Plaintiff alleged herein occurred within this judicial district, and Defendants regularly conduct business in and have engaged in the wrongful conduct alleged herein in this judicial district and, thus, are subject to personal jurisdiction in this judicial district.

# FACTUAL ALLEGATIONS

**A.    Defendants' Operations and the Role of Their Drone Pilots and Pole Inspectors**

27.    Defendants provide inspections of critical infrastructure by using drone, robot, sensor, and software technologies to deliver insights about the infrastructure.

28.    Defendants directly employ individuals as Drone Pilots and Pole Inspectors, and also contract with several professional staffing agencies, each of which staffs individuals with Defendants as Drone Pilots and Pole Inspectors, for the purpose of conducting infrastructure inspections for Defendants' clients.

29.    The job duties and responsibilities of Defendants' Drone Pilots, whether employed by Defendants only or jointly with a staffing agency, consist of, among other things, conducting inspections of electric generation and utility assets; supporting mission planning, developing mission plans, performing data collection, and assisting in the processing of collected data; and equipment repair, assembly, and integration.

30.    Defendants' Drone Pilots utilize unmanned aerial vehicles, also known as "drones," to complete their essential job functions.

31.    Each drone used by Defendants' Drone Pilots is powered by rechargeable batteries.

32.    The job duties and responsibilities of Defendants' Pole Inspectors, whether employed by Defendants only or jointly with a staffing agency, consist of, among other things, utilizing equipment to perform ground level inspections of utility poles; transporting equipment between poles and areas to be inspected; and maintaining accountability of assigned equipment.

33.    Defendants' Pole Inspectors utilize digital drills to complete their essential job functions.

34.    Each drill used by Defendants' Pole Inspectors is powered by one rechargeable battery.

35.    At all times relevant and material herein, approximately ten (10) to fifteen (15) Drone Pilots and ten (10) to fifteen (15) Pole Inspectors performed work for Defendants at any given time, although the turnover rate of Drone Pilots and Pole Inspectors was high.

36.    Defendants' Drone Pilots and Pole Inspectors were and are non-exempt employees under the FLSA and PMWA.

**B.    Defendants Regularly Require Their Drone Pilots and Pole Inspectors to Charge Batteries and Attend Work-Related Meetings Following the Conclusion of Their Shifts, But Do Not Compensate Them For This Time**

37.    When Plaintiff initially began working for Defendants, he was staffed as a Drone Pilot.

38.    Following the conclusion of Drone Pilots' daily shifts, Defendants required them to recharge any drone batteries which had been depleted during their shifts, so that the batteries were fully charged for the beginning of their next scheduled shifts.

39.    Each Drone Pilot, including Plaintiff, was responsible for recharging between one (1) and nine (9) total drone batteries per day.

40.    The specific number of drone batteries that a Drone Pilot was required to recharge depended on the amount of use that the batteries received during the Drone Pilot's shift.

41.    Drone Pilots charged the drone batteries using a charger that was provided to them by Defendants.

42.    The drone battery charger could simultaneously charge a maximum of three (3) batteries.

43.    Thus, on occasions when Plaintiff needed to recharge more than three batteries, he was required to swap the additional batteries into the charger once the initial set of three batteries had completed charging.

44.    Similarly, on occasions when Plaintiff needed to recharge more than six batteries, he was required to first swap the second set of three batteries into the charger once the initial set of three batteries had completed charging, and then

swap any remaining batteries into the charger once the second set of three batteries had completed charging.

45.    Due to fire hazards associated with recharging drone batteries, Defendant Clearsight's Regional Operations Manager, Cody Long ("Long"), instructed Plaintiff and his fellow Drone Pilots that they were ***required to remain present and observe the batteries as they recharged***.

46.    Two of Defendant Clearsight's "Level 3" Drone Pilots, Jeremy Moore and T.J. Marsh, communicated this same directive to Plaintiff and his fellow Drone Pilots.

47.    On occasions in which Plaintiff needed to charge three (3) or less batteries, Plaintiff charged the batteries at home for approximately between 30 to 45 minutes, a substantial portion of which was spent observing the batteries.

48.    On occasions in which Plaintiff had to charge between four (4) and six (6) batteries, Plaintiff charged the batteries at home for approximately between one hour and 10 minutes to one hour and 20 minutes, a substantial portion of which was spent observing the batteries.

49.    On occasions in which Plaintiff had to charge between seven (7) and (9) batteries, Plaintiff charged the batteries at home for approximately between two hours and 30 minutes to three hours, a substantial portion of which was spent observing the batteries.

50.     Nonetheless, Plaintiff and his fellow Drone Pilots were not compensated for any of the time that they spent charging drone batteries following the conclusion of their shifts.

51.     After Plaintiff worked for Defendants as a Drone Pilot for several months, Defendants transferred him to the position of Pole Inspector.

52.     Following the conclusion of Pole Inspectors' daily shifts, they were required to recharge the batteries for their digital drills, so that the batteries were fully charged for the beginning of their next shifts.

53.     Each Pole Inspector was responsible for recharging one (1) drill battery per day.

54.     Plaintiff spent approximately 30 minutes recharging his drill battery following the conclusion of each shift.

55.     Plaintiff and his fellow Pole Inspectors were not compensated for any of the time that they spent charging drill batteries following the conclusion of their shifts.

56.     Defendants also required their Drone Pilots and Pole Inspectors to regularly attend virtual meetings via Microsoft Teams following the conclusion of their shifts.

57.     During the meetings, Defendants discussed staffing issues and projects for the next shift, among other things.

58.    The meetings were sometimes held several times per week, or at times every day of the week, and generally lasted between 20 to 30 minutes.

59.    Prior to early August 2021, Defendants did not compensate Drone Pilots and Pole Inspectors for attending the after-hours meetings.

60.    Drone Pilots and Pole Inspectors, including Plaintiff, regularly worked more than forty 40 hours per workweek.

61.    Thus, by failing to compensate Drone Pilots and Pole Inspectors for all hours worked, Defendants also failed to pay them the federal- and state-mandated overtime rate for all hours worked in excess of 40 hours per workweek.

62.    For example, during the week beginning on July 4, 2021 and ending on July 10, 2021, Plaintiff was compensated for 47 hours of work, including 7 hours of overtime compensation.

63.    However, during the same week, Plaintiff was required to charge batteries and attend meetings following the conclusion of his shifts, and was not compensated for that time; thus, Plaintiff was paid less overtime compensation than he was due.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

64.    Plaintiff brings this action on behalf of the Collective as a collective action pursuant to the FLSA, 29 U.S.C. §§ 207 and 216(b). The claims under the

FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

65.    As described herein, Defendants regularly failed to compensate Drone Pilots and Pole Inspectors for all hours worked, including for time spent charging batteries and attending meetings after the conclusion of their shifts.

66.    Defendants also failed to compensate Drone Pilots and Pole Inspectors for all hours worked in excess of forty (40) hours per workweek.

67.    Plaintiff, having been employed by Defendants as a Drone Pilot and Pole Inspector, and subjected to the same pay policies and unlawful pay practices applicable to all Drone Pilots and Pole Inspectors, is similarly situated to the members of the Collective.

68.    Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of himself and the Class for claims under the PA Laws. The claims brought pursuant to the PA Laws may be pursued by all similarly-situated persons who do not opt out of the Class pursuant to Fed. R. Civ. P. 23.

69.    Upon information and belief, the members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of the members of the Class is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are at least forty (40) individuals in the Class.

70.    The claims of Plaintiff are typical of the claims of the Class he seeks to represent.  Plaintiff and the members of the Class worked for Defendants as Drone Pilots and/or Pole Inspectors and were subject to the same compensation policies and practices, as set forth above.

71.    Common questions of law and fact exist as to the Class that predominate over any questions affecting Class members individually and include, but are not limited to, the following:

(a) whether Defendants had a uniform policy and/or practice of failing to pay Drone Pilots and Pole Inspectors for all hours worked;

(b) whether Defendants' conduct in failing to pay Drone Pilots and Pole Inspectors for all hours worked was willful;

(c) whether Defendants failed to pay Drone Pilots and Pole Inspectors overtime compensation for all hours worked in excess of 40 per workweek;

(d) whether Plaintiff and members of the Class are entitled to compensatory damages, and if so, the means of measuring such damages;

(e) whether Plaintiff and members of the Class are entitled to restitution;

(f) whether Plaintiff and the members of the Class are entitled to liquidated damages; and

(g) whether Defendants are liable for attorneys' fees and costs.

72.    Plaintiff will fairly and adequately protect the interests of the Class as his interests are in alignment with those of the members of the Class.  Plaintiff has no interests adverse to the Class he seeks to represent, and has retained competent and experienced counsel.

73.    The class action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy.  The damages suffered by individual members of the Class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Class to individually seek redress for the wrongs done to them.

74.    Defendants have acted willfully and with a lack of good faith in their violations of the FLSA and PA Laws.

## COUNT I

### FAIR LABOR STANDARD ACT: OVERTIME WAGE VIOLATIONS
(On Behalf of Plaintiff and the Collective)

75.    Plaintiff, on behalf of himself and the Collective, realleges and incorporates by reference the paragraphs above as if they were fully set forth at length again herein.

76.    At all relevant times, Defendants were employers engaged in commerce or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 207(a).

77.    Specifically, at all relevant times, Defendants jointly employed and/or continue to jointly employ, Drone Pilots and Pole Inspectors such as Plaintiff and the members of the Collective and the Class, "engaged in commerce or in the production of goods for commerce" and "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce," within the meaning of 29 U.S.C. § 203(s)(1)(A)(i).

78.    At all relevant times, Defendants also have had annual gross volume of sales made or business done in excess of $500,000, within the meaning of 29 U.S.C. § 203(s)(1)(A)(ii).

79.    In addition, or in the alternative, Plaintiff and members of the Collective regularly used the instrumentalities of interstate commerce in their work.

80.    At all relevant times, Defendants jointly employed Plaintiff and each of the Collective members within the meaning of the FLSA.

81.    At all relevant times, Plaintiff and members of the Collective were non-exempt employees under the FLSA and were entitled to be paid overtime compensation for all hours worked in excess of 40 hours per workweek.

82.    Pursuant to Defendants' policies and procedures, Defendants willfully failed to pay overtime compensation to Drone Pilots and Pole Inspectors: (i) for

time spent charging their drone batteries; (ii) for time spent charging their drill batteries; and (iii) for time spent attending work-related meetings.

83.    As a result of Defendants' willful failure to compensate their employees, including Plaintiff and members of the Collective, the appropriate overtime compensation for all hours worked in excess of 40 hours per workweek, Defendants violated the FLSA, 29 U.S.C. § 201, *et seq.*

84.    Defendants' conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

85.    Due to Defendants' FLSA violations, Plaintiff, on behalf of himself and the members of the Collective, is entitled to recover from the Defendants: compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT II

**PENNSYLVANIA MINIMUM WAGE ACT:**
**OVERTIME WAGE VIOLATIONS**
**(On Behalf of Plaintiff and the Class)**

86.    Plaintiff, on behalf of himself and the members of the Class, realleges and incorporates by reference the paragraphs above as if they were fully set forth at length again herein.

87.    At all relevant times, Plaintiff and members of the Class were non-exempt employees under the PMWA and were entitled to be paid overtime compensation for all hours worked in excess of 40 hours per workweek.

88.    Pursuant to Defendants' policies and procedures, Defendant willfully failed to pay overtime compensation to Drone Pilots and Pole Inspectors: (i) for time spent charging their drone batteries; (ii) for time spent charging their drill batteries; and (iii) for time spent attending work-related meetings.

89.    As a result of Defendants' willful failure to compensate their employees, including Plaintiff and members of the Class, the appropriate overtime compensation for all hours worked in excess of 40 hours per workweek, Defendants violated the PMWA, 43 P.S. § 260.1 *et seq.*

90.    Due to the Defendants' violations, Plaintiff, on behalf of himself and the members of the PA Class, is entitled to recover from Defendants the amount of unpaid overtime wages, liquidated damages, and attorneys' fees and costs.

## COUNT III

### VIOLATION OF PENNSYLVANIA COMMON LAW:
### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

91.    Plaintiff, on behalf of himself and the Class members, realleges and incorporates by reference the paragraphs above as if they were fully set forth at length again herein.

18

92.    Plaintiff and the members of the Class were jointly employed by Defendants within the meaning of the PA Laws.

93.    At all relevant times, Defendants maintained a willful policy and practice of failing to compensate Drone Pilots and Pole Inspectors for all hours worked per workweek, which resulted in Plaintiff and other Drone Pilots and Pole Inspectors being paid for less straight-time and overtime hours than they had worked.

94.    Defendants retained the benefits of their failure to compensate Plaintiff and other Drone Pilots and Pole Inspectors under circumstances which rendered it inequitable and unjust for Defendants to retain such benefits.

95.    Defendants were unjustly enriched by failing to compensate Plaintiff and other Drone Pilots and Pole Inspectors.

96.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and the members of the Class suffered injury and are entitled to reimbursement, restitution, and disgorgement from Defendants of the benefits conferred by Plaintiff and the Class.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and/or on behalf of himself and all other similarly situated members of the Class and Collective, respectfully requests that this Court grant the following relief against Defendants:

A.    Certification of this action as a collective action on behalf of the Collective, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b), apprising the Collective members of the pendency of this action, and permitting the Collective members to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

B.    Certification of the action as a class action under Fed. R. Civ. P. 23(b)(3) on behalf of the Class;

C.    On the first claim for relief, an award of unpaid compensation for overtime and an additional amount as liquidated damages to Plaintiff and the members of the Collective;

D.    On the second claim for relief, an award of unpaid compensation for overtime and an additional amount as liquidated damages to Plaintiff and the members of the Class;

E.    On the third claim for relief, an award of reimbursement, restitution, and disgorgement from Defendants of wages improperly retained by Defendants to the Plaintiff and the members of the Class;

F.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiff and members of the Class and Collective; and

G.    Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted,

Date:  8/23/2022         BY:  */s/ Peter C. Wood, Jr.*
                              Peter C. Wood, Jr., Esq. (PA 310145)
                              Matthew Mobilio, Esq. (PA 209439)
                              **MOBILIO WOOD**
                              900 Rutter Ave., Box 24
                              Forty Fort, PA 18704
                              Phone: (570) 234-0442
                              Fax: (570) 266-5402
                              peter@mobiliowood.com
                              matt@mobiliowood.com

                              *Co-Counsel for Plaintiff Dakota Haldeman*

                              Alex Pisarevsky, Esq. (NJ 029262008)
                              (To be admitted *Pro Hac Vice*)
                              Erika R. Piccirillo, Esq. (NJ 098362014)
                              (To be admitted *Pro Hac Vice*)
                              **COHN LIFLAND PEARLMAN**
                              **HERRMANN & KNOPF LLP**
                              Park 80 West-Plaza One
                              250 Pehle Avenue, Suite 401
                              Saddle Brook, NJ 07663
                              Phone: (201) 845-9600
                              Fax: (201) 845-9423
                              ap@njlawfirm.com
                              ep@njlawfirm.com

                              *Co-Counsel for Plaintiff Dakota Haldeman*